UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NITIN SINGH,

Plaintiff,

v.

CONSOR NORTH AMERICA, INC., et al.,

Defendants.

Case No. 26-cv-01372-KAW

**ORDER DENYING MOTION TO REMAND**

Re: Dkt. No. 11

Plaintiff Nitin Singh filed the instant putative class action against Defendants Consor PMCM, Inc., Consor Holdings, LLC, and Consor North America, Inc. in the Alameda County Superior Court, alleging violations of various California wage and hour laws. (Compl., Dkt. No. 1-2.) Defendants subsequently removed the case. (Dkt. No. 1.) Pending before the Court is Plaintiff's motion to remand the case back to state court.

Having considered the parties' filings, the relevant legal authorities, and the arguments made at the August 20, 2026 hearing, the Court DENIES Plaintiff's motion to remand.

## I. BACKGROUND

On January 8, 2026, Plaintiff filed the instant putative class action. Therein, Plaintiff alleged that between May 9, 2025 and October 31, 2025, Plaintiff was employed by Defendants and "was at all times classified . . . as a non-exempt employee, paid on an hourly basis, and entitled to the legally required meal and rest periods and payment of minimum and overtime wages due for all time worked." (Compl. ¶ 7.) Plaintiff, however, alleges that he was required to work during his meal breaks, as he "was from time to time interrupted by work assignments while clocked out for what should have been [his] off-duty meal break." (Compl. ¶ 12.) As a result, Plaintiff was not paid required overtime and meal and rest break premiums. (Compl. ¶ 13.)

United States District Court
Northern District of California

Plaintiff also asserts that he was not given proper rest breaks because Defendants' policy restricted him from unconstrained walks, thus violating California law requiring that employers relinquish control over how employees spend their time during rest periods. (Compl. ¶ 16.) Finally, Plaintiff alleges that Defendants failed to reimburse Plaintiff for required business expenses. (Compl. ¶¶ 24-25.) Based on these alleged wrongful practices, Plaintiff alleges that Defendant failed to accurately record and pay Plaintiff for the actual time worked, failed to provide complete and accurate wage statements, underpaid sick wages, and failed to pay waiting time penalties. (Compl. ¶¶ 17-22.)

Plaintiff then filed the instant suit in state court, alleging claims for: (1) unlawful business practices in violation of the Unfair Competition Law, (2) failure to pay minimum wages, (3) failure to pay overtime, (4), failure to provide meal breaks, (5) failure to provide rest periods, (6) failure to provide accurate wage statements, (7) failure to reimburse for expenses, (8) failure to pay wages when due, and (9) failure to pay sick pay wages. On February 16, 2026, Defendants removed the case based on diversity jurisdiction, asserting that Plaintiff's individual claim was in excess of $75,000. (Not. of Removal ¶ 7, Dkt. No. 1.)

On March 18, 2026, Plaintiff filed the instant motion to remand. (Pl.'s Mot. to Remand, Dkt. No. 11.)[1] On April 1, 2026, Defendants filed an opposition. (Def.'s Opp'n, Dkt. No. 17.) On April 8, 2026, Plaintiff filed a reply. (Pl.'s Reply, Dkt. No. 19.) On April 16, 2026, Defendants filed a motion for leave to file a sur-reply. (Dkt. No. 20.) On June 8, 2026, the Court granted Defendants' motion for leave. (Dkt. No. 32.) On June 11, 2026, Defendants filed their sur-reply. (Defs.' Sur-Reply, Dkt. No. 33.) On June 25, 2026, Plaintiff filed a response to the sur-reply. (Pl.'s Resp., Dkt. No. 35.)

On July 16, 2026, the parties filed a stipulation allowing Plaintiff leave to file an amended complaint. (Dkt. No. 41.) On July 17, 2026, the Court granted the parties' stipulation, and requested supplemental briefing as to whether the amended complaint affects the motion to

---

[1] On March 24, 2026, Defendants filed a declination to magistrate judge jurisdiction. (Dkt. No. 14.) The case was subsequently reassigned to a district judge. (Dkt. No. 15.) On June 2, 2026, the parties agreed to consent to the undersigned, and the case was subsequently reassigned back to this Court. (Dkt. Nos. 29-31.)

remand. (Dkt. No. 42.) On July 21, 2026, Plaintiff filed the operative complaint. (First Amend. Compl. ("FAC"), Dkt. No. 43.) Therein, Plaintiff removed the prior allegation that he was "at all times classified" as a non-exempt employee during his employment. (FAC ¶ 7.) Rather, Plaintiff alleged that he was only a non-exempt employee "during the approximate period of time of September 6, 2025 through October 31, 2025.) (FAC ¶ 7.) On July 28, 2026, the parties filed their supplemental briefs. (Pl.'s Supp. Br., Dkt. No. 44; Def.'s Supp. Br., Dkt. No. 45.)

## II. LEGAL STANDARD

In general, "a defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014) (quoting 28 U.S.C. § 1446(a).) When a defendant removes a case, the "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554. From there, "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 553. If, however, the plaintiff contests the amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 554 (citing 28 U.S.C. § 1446(c)(2)(B)).

The defendant who seeks removal has the burden to show by a preponderance of evidence that the amount in controversy is adequate. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). To do so, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* (internal quotation omitted). Under this standard, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

## III. DISCUSSION

At issue in this motion to remand is whether Defendants have established by a preponderance of the evidence that the amount in controversy exceeds $75,000. As an initial matter, the Court acknowledges that Plaintiff has alleged in the complaint that the amount in

United States District Court
Northern District of California

controversy for his individual claim "does not exceed the sum or value of $75,000." (Pl.'s Mot. to Remand at 1; Compl. ¶ 26.) Courts, however, have found that such statements are not dispositive because "under California law, a plaintiff is not limited to the amount set forth in his or her complaint." *Patel v. Nike Retail Servs.*, 58 F. Supp. 3d 1032, 1036 (N.D. Cal. 2014) (citing *Damele v. Mack Trucks, Inc.*, 219 Cal. App. 3d 29, 41-42 (1990)). Thus, the Court must still review Defendants' calculations of the amount in controversy.

As discussed below, the Court finds that Defendants have established the following categories of damages at issue.[2]

| | |
|---|---|
| **Overtime Claim:** | $38,811.82 |
| **Waiting Time Penalties:** | $21,230.00 |
| **Attorney's Fees:** | $40,000.00 |
| **Total:** | **$100,041.82** |

### A. Overtime Claim

The Court finds that Defendants have produced evidence that Plaintiff's overtime claim is at least **$38,811.83** in controversy. Specifically, Defendants point to Plaintiff's claim with the California Department of Industrial Relations, Division of Labor Standards Enforcement (the "DLSE Claim"). (Defs.' Opp'n at 1-2, Exh. A ("DLSE Claim").) Therein, Plaintiff alleges that during the period of May 12, 2025 through August 10, 2025, he worked 292.5 hours of uncompensated overtime. (DLSE Claim at 1.) Further, Plaintiff states that he was paid $88.46 per hour, such that an overtime rate would be $132.69 per hour. (*Id.*) This amounts to $38,811.83 in unpaid overtime. In short, Plaintiff's own DLSE claim, which is based on his knowledge of the number of unpaid overtime hours he worked, establishes that he is entitled to a minimum of $38,811.83 in unpaid overtime. *See Woolsey v. State Farm Gen. Ins. Co.*, 672 F. Supp. 3d 1018, 1025-26 (C.D. Cal. 2023) (finding that a demand letter which provided detailed calculations in support of the alleged damages could be considered when calculating the amount in controversy).

In the reply, Plaintiff argues that this amount cannot be considered because Defendant has

[2] Because these three categories exceed $75,000, the Court does not consider the remaining categories of damages at issue in this case.

asserted that Plaintiff was exempt between May 12, 2025 to September 5, 2025, and that he was non-exempt between September 6, 2025 and October 31, 2025. (Pl.'s Reply at 3; *see* Dallas Decl. ¶ 4, Dkt. No. 17-1.) Plaintiff asserts that because he does not bring a misclassification claim, only the period of September 6, 2025 through October 31, 2025 is relevant to calculating the amount in controversy. (Pl.'s Reply at 3.)

As an initial matter, the Court notes that outside of the complaint, Plaintiff has alleged that he was "at all times classified by Defendant as a non-exempt employee, paid on an hourly basis, and entitled to . . . overtime wages due for all time worked." (Defs.' Opp'n, Exh. B ("PAGA Notice") at 1.) Thus, whether Plaintiff was classified as an exempt or non-exempt employee is a fact in dispute. More to the point, however, Defendants correctly point out that "Plaintiff's attempt to limit the relevant employment period to September 6 through October 31, 2025 cannot be reconciled with the Complaint itself." (Defs.' Sur-Reply at 2.) Indeed, the Complaint specifically states that Plaintiff "was at **all times** classified . . . as a non-exempt employee," and that Plaintiff was "entitled to the legally required meal and rest periods and payment of minimum and overtime wages due **for all time worked**." (Compl. ¶ 7 (emphasis added).) In other words, Plaintiff's complaint has put the *entire* period of his employment in controversy. As the Ninth Circuit has explained, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). The fact that there may be a dispute as to whether Plaintiff was actually classified as non-exempt for the entire period is not dispositive, and Plaintiff cites no authority that the Court may disregard Plaintiff's own allegation that he is entitled to overtime for the entire period of his employment. *See Patel*, 58 F. Supp. 3d at 1040 ("The question at this stage of the litigation is not how many overtime hours Plaintiff *actually* worked, but how many hours Plaintiff *alleges* that she did.").

In an attempt to circumvent his own allegations, Plaintiff filed an amended complaint, which changed the relevant period from Plaintiff's employment "at all times" to "the approximate period of time of September 6, 2025 through October 31, 2025." (*See* FAC ¶ 7.) While Plaintiff argued at the hearing that this was a mere "clarification," the amended complaint is simply

contradictory to the initial complaint. Moreover, as the Court previously pointed out, "'the amount in controversy is assessed at the time of removal,' *i.e.*, 'damages that are claimed at the time the case is removed by the defendant.'" (Dkt. No. 42 (quoting *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018)).) Thus, "when the amount of controversy is satisfied at removal, any subsequent amendment to the complaint or partial dismissal that decreases the amount in controversy below the jurisdictional threshold does not oust the federal court of jurisdiction." *Chavez*, 888 F.3d at 417. As applied here, the Court must calculate the amount in controversy based on the complaint *at the time* of removal, not the amended complaint that was filed *after* removal. Again, the complaint at the time of removal sought overtime for the entire period of Plaintiff's employment, and thus the amount sought by Plaintiff in his DLSE claim should be considered for purposes of calculating the amount in controversy. (Compl. ¶ 7.)

In the supplemental brief, Plaintiff argues that *Moe v. GEICO Indemnity Co.* considered a "similar type of scenario where the removing party based its calculation on the amount in controversy on a pretrial statement filed by the plaintiff related to a different claim instead of addressing the actual claims alleged in the operative action." (Pl.'s Supp. Br. at 3-4.) This misstates *Moe*; *Moe* did not suggest that the pretrial statement filed by the plaintiff concerned a different claim. Rather, *Moe* considered whether a pretrial demand could establish the reasonable estimate of the plaintiff's emotional distress claim. No. 24-3271, 2025 U.S. App. LEXIS 12480, at *5 (9th Cir. May 22, 2025). Thus, *Moe* does not suggest that the Court must consider the facts in the operative complaint, rather than the complaint at the time of removal. Notably, Plaintiff conceded at the hearing that there was no case law that supported his position.

Accordingly, the Court finds that Plaintiff's overtime claim puts at least $38,8113.83 in controversy.

**B. Waiting Time Penalties**

Defendants calculate Plaintiff's waiting time penalties as **$21,230.40**, based on the alleged regular rate of $88.46 x 8 hours per day x 30 days. (Defs.' Opp'n at 13.) Plaintiff does not challenge the calculation, but argues that Defendants cannot assume a 100% violation rate, pointing to *Melead v. TVI, Inc*. (Pl.'s Reply at 11.) In *Melead*, however, the district court found

United States District Court
Northern District of California

that it could not assume that every employee in the putative class was entitled to waiting time penalties because as pled, it was unclear that every employee suffered a violation. Case No.: SACV 20-1224-CJC(ADSx), 2020 U.S. Dist. LEXIS 164502, at *8 (C.D. Cal. Sept. 9, 2020). Here, however, the issue is whether *Plaintiff* is entitled to waiting time penalties. Plaintiff has alleged that he was terminated and that he was not given "all wages owed as required by law." (Compl. ¶ 112.) Thus, based on Plaintiff's own allegations, he is entitled to waiting time penalties. Otherwise, Plaintiff would not be able to bring a claim for waiting time penalties at all.

Accordingly, the Court finds that Plaintiff's waiting time penalty claim puts $21,230.40 in controversy.

**C. Attorney's Fees**

"Attorney's fees authorized by statute are properly included in the amount in controversy, and a court must include future attorney's fees recoverable by statute when assessing the jurisdictional threshold." *Maghirang v. Bio-Med. Applications of Cal., Inc.*, No. 25-CV-3081 JLS (BJW), 2026 U.S. Dist. LEXIS 131740, at *8 (S.D. Cal. June 11, 2026) (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). Further, "[i]n estimating future attorneys' fees, district courts may likewise rely on their own knowledge of customary rate and their experience concerning reasonable and proper fees." *Fritsch*, 899 F.3d at 795 (internal quotation omitted).

Plaintiff does not dispute that attorney's fees are warranted, but contends that Defendants' calculations are unsupported. (Pl.'s Mot. to Remand at 14.) Defendants respond that attorney's fees will be substantial, pointing to the fact that they had already incurred $65,631.95 in fees and costs by the time they filed the opposition to the motion to remand. (Defs.' Opp'n at 11; Stone Decl. ¶ 11.) The Court does not find this amount to be persuasive, given that there is nothing to suggest that the billing rates of Plaintiffs' counsel are comparable to Defendants' counsel.

That said, courts have approved conservative estimates of attorney's fees in calculating the amount in controversy. In *Maghirang*, for example, the district court approved an estimate of $30,000 in a wage and hour claim, "based on a rate of $300 per hour multiplied by a 'conservative' 100 hours of attorney work." 2026 U.S. Dist. LEXIS 131740, at *8. In approving

this calculation, the district court cited other "[c]ourts within the Ninth Circuit [who] have credited identical estimates in similar employment cases." *Id.* The district court also noted that attorney's fees in wage and hour cases "routinely exceed this figure by a substantial margin." *Id.* Likewise, in *Roszhart v. Mindlance Inc.*, the district court found that $50,000 was "a reasonable, conservative estimate" of attorney's fees in a wage and hour case where the plaintiff likewise brought claims for failure to provide meal and rest periods, payment for all hours worked, waiting time penalties, inaccurate wage statements, and failure to reimburse for business-related expenses. No. 2:25-cv-05325-JAK (PDx), 2026 U.S. Dist. LEXIS 50459, at *3, 13 (C.D. Cal. Mar. 9, 2026). The $50,000 calculation was based on a conservative $300 hourly rate and 170 hours of time. *Id.* at *13-14.

Here, Plaintiff's counsel was recently asserting hourly rates between $400 and $700 for work performed between 2015 and 2025. *See Henry v. Cent. Freight Lines, Inc.*, No. 2:16-cv-00280-DAD-JDP, 2026 U.S. Dist. LEXIS 27611, at *8 (E.D. Cal. Feb. 9, 2026). Taking the lowest $400 hourly rate and multiplying it by a very conservative 100 hours, the Court finds that based on recent cases and the Court's substantial experience with attorney's fees in this District, $40,000 in attorney's fees is a reasonable, conservative estimate of the attorney's fees that Plaintiff would seek if Plaintiff was to prevail at trial.

Combining the $40,000 in attorney's fees with the $38,8113.83 for overtime and the $21,230.40 in waiting time penalties, the Court finds that the amount in controversy is over $75,000. Thus, diversity jurisdiction is appropriate.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's motion to remand. This order does not preclude the parties from stipulating that Plaintiff's claim is worth $75,000 or less and remanding the case to state court.

IT IS SO ORDERED.

Dated: August 27, 2026

Kandis Westmore

KANDIS A. WESTMORE
United States Magistrate Judge